UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

MICHAEL SHER, ET AL.,

                  **Plaintiffs,**

     - against -

ALLSTATE INSURANCE CO.,

                **Defendant.**
───────────────────────────────

10 Civ. 5644 (JGK)

<u>OPINION AND ORDER</u>

JOHN G. KOELTL, District Judge:

    The plaintiffs, Michael Sher and Paula Sher, bring this purported class action asserting several causes of action against the defendant, Allstate Insurance Company ("Allstate"). The plaintiffs' claims arise out of Allstate's alleged practice of requiring that insured property owners replace or complete repairs of damaged property within 180 days of receipt of an actual cash value payment from Allstate.  Allstate requires the completion of such repairs or replacement before reimbursing insureds for such costs over-and-above the actual cash value payment.  The Shers suffered an insured fire loss in 2008 but, because they could not complete replacement or repairs within 180 days of receipt of the actual cash value payment, they were denied replacement/repair cost coverage.

    The Second Amended Complaint alleges nine causes of action. Count I alleges breach of the initial insurance contract.  Count II alleges that the plaintiffs' failure to comply with the 180

day condition should be excused on grounds of impossibility.
Count III requests a declaratory judgment.  Count IV alleges
breach of an alleged contract settling the plaintiffs' claims.
Count V alleges fraud.  Count VI alleges that Allstate owed the
plaintiffs a fiduciary duty, which it allegedly breached.  Count
VII requests relief under New York General Business Law ("GBL")
section 349, which prohibits deceptive business acts and
practices.  Count VIII alleges that Allstate provided illusory
coverage and seeks the return of a portion of the premiums
charged.  Count IX alleges that Allstate should be estopped from
interpreting the 180-day provision in any manner at variance
with the representations Allstate made to the New York State
Insurance Department ("NYSID") under the doctrine of regulatory
estoppel.  The defendant now moves to dismiss the plaintiffs'
claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  For the reasons explained below, the motion to
dismiss is **granted**.


                                I.

     In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007).  The Court's function on a motion to dismiss is "not to

                                2

weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985).  The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).  While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in
the complaint is inapplicable to legal conclusions." Id.
When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced
in the complaint, documents that the plaintiffs relied on in
bringing suit and that are either in the plaintiffs' possession
or that the plaintiffs knew of when bringing suit, or matters of
which judicial notice may be taken.  See Chambers v. Time
Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000).

## II.

The following facts are accepted as true for the purposes of this motion to dismiss, unless otherwise indicated.

### A.

Allstate sells property insurance policies in New York that cover, among other things, damage due to fire. (Second Amended Complaint ("SAC") ¶ 1.) In the 1990s, as part of an overhaul of its business model designed to increase profits, Allstate introduced changes to its property damage policies in New York and elsewhere. (SAC ¶¶ 63-71.) Allegedly in furtherance of higher profits, Allstate changed the language in its property damage policies regarding coverage of replacement or repair costs. Prior to the change, the policies provided:

> If you decide not to repair or replace the damaged property, settlement will be on an actual cash value basis, not to exceed the limit of liability applicable to the building. You may make claim within 180 days after the date of the loss for any additional payment on a replacement cost basis if you repair the damaged property.

(SAC ¶ 72.) Under this provision, an insured was only required to "make claim" within 180 days of the date of the loss to qualify for additional payment. (SAC ¶ 72.) An insured was not required to complete or even start repairs within 180 days of the loss. (SAC ¶ 72.)

In the 1990s, Allstate drafted new policy terms that restricted replacement and repair cost coverage.  (SAC ¶ 73.) The updated policy provision (the "180-day provision") provides:

> If you do not repair or replace the damaged building structure, payment will be on an actual cash value basis . . . You may make claim for additional payment . . . if you repair or replace the damaged, destroyed, or stolen covered property within 180 days of the actual cash value payment.

(SAC ¶ 74.)  Allstate interprets its updated policy language to require that an insured complete repairs and replacement of the insured's damaged or destroyed home and its contents within 180 days of the date Allstate paid the actual cash value ("ACV") of the covered property (the "completion requirement").  (SAC ¶ 78.)  Thus, under Allstate's interpretation, Allstate's policies entitled its insured to the actual cash value of the damaged property and, if repairs or replacements were completed within 180 days of the actual cash value payment, any additional cost of repair or replacement in excess of the actual cash value.

Allstate's updated policy also contains Building Structure Extended Reimbursement coverage (the "Extended Limits endorsement") that provides the insured with coverage for the amount it costs to repair or replace the damaged insured property up to 125 percent of the stated policy limit.  (SAC ¶ 93.)  Allstate applies the 180-day provision completion to

requirement to the Extended Limits endorsement as well.  (SAC ¶ 93.)  The Allstate policy further provides that "[w]hen the policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes."  (SAC ¶ 94.)

In 1994, NYSID approved the changes to Allstate's policy, including the 180-day provision.  (SAC ¶ 75.)  The plaintiffs allege that although NYSID approved the policy changes, it did not "knowingly" approve the 180-day provision.  (SAC ¶ 75.)  According to the plaintiffs' confidential witness, a former employee of NYSID, NYSID required Allstate to describe changes in the policy language in detail, but Allstate did not disclose the 180-day provision completion requirement as a departure from the prior "make claim" requirement.  (SAC ¶ 75.)  The plaintiffs allege that Allstate "intentionally engaged in deceptive acts" by seeking NYSID approval without disclosing the 180-day provision completion requirement in order to deprive insureds of policy benefits.  (SAC ¶ 194.)  The plaintiffs do not allege that NYSID ever withdrew the approval issued in 1994.

Since the date of approval, Allstate has issued policies containing the 180-day provision without expressly informing customers of the completion requirement.  (SAC ¶ 77.)  The plaintiffs allege that Allstate "intentionally obscured and concealed" the 180-day provision completion requirement from

consumers by refusing to allow consumers to see the policy language until after the policy had been purchased. (SAC ¶¶ 77, 197-202.)  The plaintiffs allege that Allstate manipulated the timing of their issuance of ACV payments to make it objectively impossible for any insured to repair or replace damaged property completely within 180 days of the ACV payment. (SAC ¶ 169.)

In 2009, NYSID directed Allstate to replace the 180-day provision. (SAC ¶ 114.)  As of April 2011, Allstate has issued new policies that allow for at least two years for the insured to undertake repairs, rebuild, or replace damaged property and still obtain repair/replacement cost coverage. (SAC ¶ 116.)

## B.

The named plaintiffs, Michael and Paula Sher, suffered an insured fire loss in July 2008 when their home was struck by lightning. (SAC ¶ 17.)  Shortly after the fire, the plaintiffs hired a contractor to undertake emergency repairs to their home. (SAC ¶ 18.)  In August 2008 the plaintiffs informed Allstate of their intent to repair their home. (SAC ¶ 18.)  In September 2008, the plaintiffs received a repair estimate of $733,098, which they forwarded to Allstate. (SAC ¶ 20.)

The plaintiffs received a check from Allstate for $388,000, the actual cash value, on December 10, 2008. (SAC ¶ 23.) Despite consistent efforts by the plaintiffs to repair their

home, they were unable to obtain a building permit until August 24, 2009, two months after the 180-day window had already closed.  (SAC ¶¶ 24-36, 37.)  The repairs were not completed until February 2011.  (SAC ¶ 43.)  Because the plaintiffs were unable to complete repairs within the 180-day period, Allstate refused to pay $97,000 of additional costs.  (SAC ¶¶ 45-48.)

The plaintiffs also received ACV payments for their personal property on July 13, 2009 ($179,519.16) and September 15, 2009 ($42,991.81).  (SAC ¶ 49.)  The plaintiffs failed to replace many items of personal property before the 180-day provision window expired and therefore Allstate refused to pay approximately $70,000 for personal property losses.  (SAC ¶¶ 50-51.)

In support of the class allegations, the Second Amended Complaint cites similar occurrences involving seven unnamed Allstate insureds.  (SAC ¶¶ 143-49.)  The plaintiffs allege that there are "thousands of such victims."  (SAC ¶ 150.)

## C.

The plaintiffs brought this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  The defendant now moves to dismiss the plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  With the exception of Counts II and IX, each

of the other counts is nearly identical to claims that were brought and dismissed in a suit with similar facts.  See Woodhams v. Allstate Fire & Cas. Co., 748 F. Supp. 2d 211 (S.D.N.Y. 2010), aff'd, 453 F. App'x 108 (2d Cir. 2012) (Summary Order).  The plaintiffs argue that this case involves additional facts that resolve defects that led to the dismissal of Woodhams.  As in Woodhams, each of the plaintiffs' claims, with the exception of the two new claims, relies on the assertion that the 180-day provision completion requirement is prohibited by New York Insurance Law ("NYIL") section 3404, which sets minimum terms and provisions for fire insurance policies.  The plaintiffs also claim that the 180-day provision is inconsistent with the terms of the insurance contracts, and that Allstate misleadingly offered policies promising replacement or repair coverage while knowing that the 180-day provision would bar most losses from coverage.

There are two claims in this suit that were not brought in Woodhams.  In Count II, the plaintiffs claim that the impossibility of completing a repair or replacement within 180 days of the actual cash value payment requires excusal of the 180-day condition for coverage.  In Count IX, the plaintiffs argue that Allstate's failure to explain to NYSID that there was a completion requirement estops Allstate from now interpreting the policy to require completion.

Allstate argues that the 180-day provision is not contrary to New York law and that the performance required by the provision is not impossible or inconsistent with any relevant contract.  It also argues that none of Allstate's communications were deceptive or misleading and that the plaintiffs failed to plead fraud with particularity, in violation of Federal Rule of Civil Procedure 9(b).  Finally, Allstate argues that it did not owe the plaintiffs a fiduciary obligation, that any claim for rescission is barred by the filed rate doctrine, and that the plaintiffs have not stated a claim for regulatory estoppel.

### III.

### A.

The central issues animating nearly all of the plaintiffs' claims are (1) whether the 180-day provision completion requirement is inconsistent with New York law and (2) whether Allstate's interpretation is inconsistent with the terms of the insurance policy.  These issues will be addressed prior to assessing each of the claims individually.

### 1.

The first overarching question is whether the 180-day provision completion requirement is inconsistent with the New York standard fire policy.  New York law requires that the terms

10

and provisions of fire insurance policies must be "no less favorable to the insured than those contained in the standard fire policy" provided in section 3404(e).  N.Y.I.L § 3404(f)(1)(A).  The standard fire policy ("SFP") provides that an insurer must afford to the insured:

THE <u>LESSER</u> AMOUNT OF EITHER:

1) THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME OF THE LOSS, OR

2) THE AMOUNT WHICH IT WOULD COST TO REPAIR OR REPLACE THE PROPERTY WITH MATERIAL OF LIKE KIND AND QUALITY WITHIN A REASONABLE TIME AFTER SUCH LOSS, WITHOUT ALLOWANCE FOR ANY INCREASED COST OF REPAIR OR RECONSTRUCTION BY REASON OF ANY ORDINANCE OR LAW REGULATING CONSTRUCTION OR REPAIR, AND WITHOUT COMPENSATION FOR LOSS RESULTING FROM INTERRUPTION OF BUSINESS OR MANUFACTURE, OR

3) TO AN AMOUNT NOT EXCEEDING _____ DOLLARS, BUT IN ANY EVENT FOR NO MORE THAN THE INTEREST OF THE INSURED, AGAINST ALL DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter. . . .

<u>Id.</u> § 3404(e) (emphasis added).  So long as an insurer provides to the insured at least the "actual cash value of the property at the time of the loss," the insurer is providing coverage that is at least as favorable as the SFP.  <u>See</u> <u>Woodhams</u>, 453 F. App'x at 111.  The insurer is only required to provide the "<u>lesser</u> amount</u>" of actual cash value, or the cost of repair or replacement, or an otherwise fixed limitation-of-liability amount.  Allstate's 180-day provision provides for the actual

cash value <u>and</u> the possibility that the insured could also
recover the repair or replacement costs.  (SAC ¶ 74 ("payment
will be on an actual cash value basis . . . You may make claim
for additional payment . . . if you repair or replace the
damaged, destroyed, or stolen covered property within 180 days
of the actual cash value payment.").)  Therefore, because at a
minimum an insured will receive the actual cash value, the
Allstate Policy is at least as favorable to the insured as New
York law requires.  <u>See</u> <u>Woodhams</u>, 453 F. App'x at 111 ("Because
Allstate  paid plaintiffs the actual cash value of their
property at the time of loss, which was allegedly less than the
full value of repairs, Allstate satisfied its statutory
obligation to provide 'no less favorable' coverage than that set
forth in § 3404(e).").

        The plaintiffs argue that the standard fire policy does not
require that repair or replacement be completed within 180 days
of the loss, but only within a "reasonable time" after the loss,
and therefore, the standard fire policy offers more favorable
terms than the Allstate policy.  This argument is flawed
because, as explained, the Allstate policy already offers terms
at least as favorable as the standard fire policy by providing
the actual cash value.  <u>See</u> <u>id.</u>  The repair/replacement coverage
is <u>in addition</u> to the actual cash value.  Therefore, it is
irrelevant whether the phrase "reasonable time" is a limitation

on the time period for making a claim, as the plaintiffs allege, or is a measurement of the cost of repairs, as the defendant argues.  Because Allstate's policy provides for the actual cash value, and because that is sufficient to comply with the terms of the standard fire policy, it is immaterial whether the completion requirement complies with the second prong of the standard fire policy requirement.  See id. ("The purported unreasonableness of the time for repair and replacement allowed by the Allstate policy thus cannot support [the] plaintiffs' claims that Allstate's policy fails to satisfy New York insurance law.").

The plaintiffs also argue that the word "property" in section 3404(e) refers to the entire property, and not just the damaged portion of the property.  Under the plaintiffs' proposed reading of section 3404(e), Allstate was required to provide coverage offering at least the lesser of (1) the actual cash value of the entire property or (2) the amount it would cost to repair or replace the entire property.  The plaintiffs claim that because Allstate interpreted the 180-day provision to apply only to the actual cash value of the damaged property, the 180-day provision provides less favorable coverage than the standard fire policy.  The plaintiffs' purported interpretation is without merit.

13

Contrary to the plaintiffs' assertion that the Second Circuit Court of Appeals did not reach this issue, the Court of Appeals in Woodhams both reached and rejected the plaintiffs' proposed reading of the statute, stating:

> In any event, the argument [that "property" in § 3404(e) refers to the entire property] fails on the merits. The "property" referred to in § 3404(e) is only property damaged by fire; it does not include undamaged property for which there has been no loss.

Id. (internal citations omitted).[1] To the extent this statement by the Court of Appeals was dicta, see Paul v. Gonzales, 444 F.3d 148, 155 n.6 (2d Cir. 2006), the reasoning is persuasive and it is adopted here, see Cent. Green Co. v. United States, 531 U.S. 425, 431 (2001) (Dicta "may be followed if sufficiently persuasive but [is] not binding.") (internal quotation marks and citation omitted).[2]

---

[1] The Court of Appeals noted that the plaintiffs had waived the argument by not raising it before this Court, but proceeded to reject the argument on the merits in any event. Woodhams, 2012 WL 5834 at *11.

[2] The plaintiffs also argue that the decision in Woodhams should not control because, as a Summary Order, it does not have precedential effect. However, "[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." Jackler v. Byrne, 658 F.3d 225, 244 (2d Cir. 2011) (internal quotation marks and citation omitted) ("[T]he rationale underlying the Rule is that such orders, being summary, frequently do not set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make our summary ruling applicable to the new case.") This case is nearly identical to Woodhams and this Court would not consider itself free to disregard the reasoning of the Court of Appeals on the same

New York precedent indicates that the word "property" in sections 3404(e)(1) and (2) of the standard fire policy refers to "damaged property."  As the New York Court of Appeals explained in its seminal case on actual cash value, "[i]ndemnity is the basis and foundation of all insurance law.  The contract of the insurer is not that, if the property is burned, he will pay its market value, but that he will indemnify the assured, that is, save him harmless or put him in as good a condition, so far as practicable, as he would have been in if no fire had occurred."  McAnarney v. Newark Fire Ins. Co., 159 N.E. 902, 904 (N.Y. 1928) (internal quotation marks and citation omitted).  Interpreting property in section 3404(e)(1) to mean "damaged" property advances the principle of indemnity.  Providing the insured with the actual cash value of the damaged property puts the insured in as good a position as he would have been in had no fire occurred.  "[The] Plaintiffs' urged interpretation of New York law to demand compensation for the [the entire property] would be contrary to the fundamental purpose of insurance, which is to make the insured whole following loss."  Woodhams, 453 F. App'x at 111.

---

issue.  The reasoning of the Court of Appeals is, in any event, persuasive.

Moreover, as the Second Circuit Court of Appeals explained in Woodhams, the plaintiffs' proffered interpretation is irreconcilable with the second prong of section 3404(e):

> The conclusion [that "property" refers only to the damaged property] is only reinforced by the use of the word "property" in the second enumerated provision of the statute, referencing compensation for "the amount which it would cost to repair or replace the property with a material of like kind and quality." This clearly refers to property that was damaged and is, therefore, in need of repair or replacement. Under New York law, "where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute. Thus, the use of the word "property" in the provision of the statute referencing compensation for "the actual cash value of the property at the time of the loss," presumptively refers to the insured's damaged property. Because plaintiffs have failed to rebut that presumptive interpretation, this part of their statutory argument would fail even if it had not been waived.

See id. (internal citations omitted and emphasis added).[3]

The plaintiffs also argue that the Court of Appeals interpretation cannot be correct because it would "nullify"

---

[3] Interpreting section 3404(e)(1) to require determination of the actual cash value of the damaged property at the time of the loss is also supported by case law in New York that determines actual cash value by calculating the difference between the value of the property prior to the fire with the value of the property after the fire. See, e.g., Gumbs v. New York Property Ins. Underwriting Asso., 495 N.Y.S.2d 204 (App. Div. 1985); Agostino v. Holyoke Mut. Ins. Co., 452 N.Y.S.2d 227 (App. Div. 1982); Incardona v. Home Indem. Co., 400 N.Y.S.2d 944, 945 (App. Div. 1977). This method of calculation, implicitly being made pursuant to section 3404(e)(1), measures the value of the damaged property, not the entire property.

section 3404(e)(2).  The plaintiffs claim that the actual cash value of the damaged property is <u>always</u> less than the repair/replacement cost of the damaged property; therefore interpreting "property" as "damaged property" writes section 3404(e)(2) out of the standard fire policy.  This theory is based purely on the plaintiffs' speculation and is undercut by New York's "broad evidence rule."  <u>See</u> <u>McAnarney</u>, 159 N.E. at 904-05; <u>see also</u> <u>SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC</u>, 445 F. Supp. 2d 320, 342 (S.D.N.Y. 2006).  In <u>McAnarney</u>, the New York Court of Appeals explained that the calculation of actual cash value is not solely market value less depreciation, but rather:

> Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss.  It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light on the subject.

159 N.E. at 905.  Contrary to the plaintiffs' assertion, because of the broad evidence rule, the actual cash value is not simply the cost to repair minus depreciation, and therefore it is unclear in any given case whether the actual cash value or the cost to repair/replace will be the lesser sum.  Moreover, even if the actual cash value is generally the lesser amount, the

standard fire policy provides that the insurer need only pay
that amount.  Recognizing that the actual cash value of a loss
is generally less than the cost to repair or replace the damaged
property does not render section 3404(e)(2) irrelevant as a
standard for those cases where the costs of repair may be less.

The plaintiffs further argue that the use of the words
"loss" and "actual cash value" separately in subsequent
provisions of the standard fire policy indicates that actual
cash value is not the same as loss.  However, the word being
interpreted is "property," not "actual cash value" or "loss."
For all of the reasons explained, "property" in section
3404(e)(1) and (2) plainly refers to the damaged property, and
not to the entire property.

The plaintiffs also argue that "property" cannot refer to
"damaged property" because such an interpretation would conflict
with the use of the word "property" in section 3404(e)(3).
However, section 3404(e)(3) does not refer to "property" but to
"the property described hereinafter."  Hereinafter is defined as
"[l]ater in this document."  See Black's Law Dictionary 795 (9th
ed. 2009).  The context of the sentence makes clear that "the
property described hereinafter" is a reference to a subsequent
definition of the property and not a reference to the damaged
property that was described immediately prior to section
3404(e)(3) in sections 3404(e)(1) and (2).  Were the clause

referencing the same damaged property described in 3404(e)(1) or
(2), it could have provided "the property described heretofore"
or simply "the property."  See id. (defining "heretofore" as
"[u]p to now").   As the Court of Appeals explained
persuasively, defining property as "damaged property" is the
better view, see  Woodhams, 453 F. App'x at 111, and the
defendant's policy did not violate New York law by providing
payment solely for the actual cash value of the damaged portion
of the property.


**2.**

     The plaintiffs next argue that the 180-day provision is
ambiguous and/or should be interpreted to require only that an
insured "undertake" repairs within 180 days.  The defendant
argues that the policy is unambiguous and requires that any
repair, rebuilding, or replacement be completed within 180 days.
The plaintiffs' argument is foreclosed by the Court of Appeals
decision in Woodhams, 411 F. App'x at 111-13.

     "Contracts of insurance, like other contracts, are to be
construed according to the sense and meaning of the terms which
the parties have used, and if they are clear and unambiguous the
terms are to be taken and understood in their plain, ordinary
and proper sense."  In re Estates of Covert, 761 N.E.2d 571,
576-77 (N.Y. 2001) (quoting Hartol Prods. Corp. v. Prudential

Ins. Co. of Am., 47 N.E.2d 687, 689 (N.Y. 1943)) (brackets omitted).

The plaintiffs' argument revolves around two provisions of the Allstate policy. Section I, Conditions, Number 5(b), entitled "Actual Cash Value," provides:

> If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation . . . .
>
> You may make claim for additional payment as described in paragraph c and paragraph d if applicable, if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

(Compl. Ex. 17 at 18 (emphasis added); Selock Decl. Ex. B at 20.)

Section I Conditions, Number 5(c), entitled "Building Structure Reimbursement," provides:

> Under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a building structure damaged by a covered loss.

(Compl. Ex. 17 at 18 (emphasis added); Selock Decl. Ex. B at 20.)

As this Court held previously with respect to identical policy language, the provisions unambiguously require completion:

> These provisions plainly require that the claim for additional payment be for a repair or replacement "within" 180 days of the actual cash payment. Moreover, the additional payment is to "reimburse" a policyholder for costs in excess of the actual cash value if the policyholder repairs, rebuilds, or replaces damaged property "within" 180 days of the actual cash value payment.
>
> The word "within" is a word of limitation. See Webster's II New Riverside Dictionary 1324 (1988) (defining "within" to mean, relevantly, "[i]nside the fixed limits of: not beyond"). The word "reimburse" means "repay" or "pay back or compensate (a person) for money spent or for losses or damages incurred." Id. at 991.
>
> These provisions unambiguously provided for repayment to the policyholder for actual expenses paid to restore the property in this period up to 180 days after the actual cash value payment is made. It is not sufficient that a repair is begun within that period.

Woodhams, 748 F. Supp. 2d at 219.  The Court of Appeals upheld this interpretation of the policy language, explaining, "[the] plaintiffs can point to no policy language obligating Allstate to reimburse for repairs not yet commenced—let alone completed—within the 180-day period," and refused to address the plaintiffs' extrinsic evidence "because the language of the Allstate policy is unambiguous."  Woodhams, 411 F. App'x at 112-13; see also Reddick v. Allstate N.J. Ins. Co., No. 11 365, 2011 WL 6339688, at *4 (D.N.J. Dec. 16, 2011) (interpreting identical policy provision and holding, "the policy's plain language

indicates that plaintiff is not entitled to the replacement costs unless she repairs or replaces the damaged property within 180 days of the actual cash value payment.").[4]  In this case, as in Woodhams, the policy language unambiguously requires completion within 180 days.

The plaintiffs marshal various arguments in an unsuccessful attempt to distinguish this case from Woodhams; however, each is a distinction without a relevant difference.  The plaintiffs offer a 2009 letter from an employee at NYSID.  However, as the Court of Appeals explained, because the clause is unambiguous, extrinsic evidence should not be considered in order to create an ambiguity.  See Woodhams, 411 F. App'x at 113 (citing Madison Ave. Leasehold, LLC v. Madison Bentley Assoc. LLC, 66, 861

---

[4] The plaintiffs argue that Caroselli, a District Court decision from the Eastern District of Pennsylvania interpreting the same policy language, creates ambiguity as to the meaning of the 180-day provision.  Caroselli v. Allstate Prop. & Cas. Ins. Co., No. 10 1671, 2010 WL 3239356, at *4-6 (E.D. Pa. Aug. 16, 2010).  However, as the Court of Appeals explained in Woodhams, the language the plaintiff relies upon in Caroselli is dicta, Woodhams, 453 F. App'x at 113, and as the District Court of New Jersey explained, "the question relevant here was not in the court's focus [in Caroselli].  Moreover, Caroselli contains other language that is just as favorable to defendant's interpretation.  See [Caroselli, 2010 WL 3239356, at *6] ('[B]y failing to repair his damaged property within 180 days from receipt of Allstate's final payment, Plaintiff has failed to satisfy the condition precedent under the policy and is not entitled to make a claim for additional sums.')."  Reddick, 2011 WL 6339688, at *4 n.1.

N.E.2d 69, (N.Y. 2006) (stating the parol evidence rule)).[5]  The
plaintiffs also argue that NYSID required Allstate to change its
policy in 2009 and that this was an implicit rejection of the
180-day provision by NYSID.  However, NYSID has never withdrawn
its prior 1994 approval of the Allstate policy, and similar
arguments were rejected by this Court in Woodhams.  See
Woodhams, 748 F. Supp. 2d at 218 ("[T]he plaintiffs have
provided no authority for the proposition that a federal court
has the power to void NYSID's approval of a policy form, in the
absence of NYSID's withdrawal of approval under NYIL section
2307(b), based on the court's analysis of the state of NYSID's
knowledge.").

     The plaintiffs also claim that the Shers, unlike the
plaintiffs in Woodhams, undertook repairs on their home.  This
argument is incorrect and without merit.  First, the pleadings
in this case do not indicate that the Shers undertook repairs.
The plaintiffs only allege that by mid-June 2009, when the 180-
day window expired, the Shers had hired an architect, a
contractor, and an attorney who prepared plans and permit
applications.  (SAC ¶¶ 25-35.)  The pleadings do not allege that

---

[5] Furthermore, as the defendant explains, this memo is not a "new
development," because it was provided to this Court in the
Woodhams case.  See Wilkofsky Decl., Woodhams v. Allstate Fire &
Cas. Co., 10 Civ. 441 (S.D.N.Y. Mar. 26, 2010), ECF No. 31.
Indeed, the entirety of exhibit 15 to the plaintiffs' Second
Amended Complaint was introduced by the plaintiffs in Woodhams
and was considered by this Court in that case.  See id.

the Shers had purchased any building materials or had actually
begun physical rebuilding.  Indeed the plaintiffs allege that
the 180 day period after payment of the actual cash value lapsed
in mid-June 2009, but the plaintiffs only signed a construction
contract on August 19, 2009, and concrete work began in
September 2009.  (SAC ¶¶ 35-36, 38.)[6]  Furthermore, because the
180-day provision is unambiguous and requires completion of
repairs for which reimbursement is sought, even if the
plaintiffs had alleged that they undertook repairs, because
those repairs were not completed within 180 days, the allegation
would have been irrelevant.  See Woodhams, 453 F. App'x at 112
("However understandable the[ir] reasons for delay in the
undertaking of repairs, plaintiffs can point to no policy
language obligating Allstate to reimburse for repairs not yet
commenced—let along completed—within the 180-day period.").
In summary, the 180-day provision is not inconsistent with the
standard fire policy and the language of the Allstate policy
unambiguously provides that an insured must completely repair,
rebuild, or replace damaged property within 180 days of receipt
of the actual cash value payment in order to be eligible for
reimbursement for those expenses.  With these background

---

[6] The plaintiffs confirmed at the argument of the motion that no
materials were purchased and no repairs were started within the
180 day period.  (Hr'g Tr. 17-18, Feb. 19, 2013.)

principles firmly established, it is time to review the claims
in the Second Amended Complaint individually.


### B.

The plaintiffs' Second Amended Complaint alleges nine
causes of action: (1) breach of the initial insurance contract;
(2)that the plaintiffs' failure to comply with the 180 day
condition should be excused on grounds of impossibility; (3)
declaratory judgment; (4) breach of a contract settling the
plaintiffs' claims; (5) fraud; (6) breach of fiduciary duty; (7)
relief under New York GBL section 349; (8) Allstate provided
illusory coverage and must return a portion of the premiums
charged; and (9) Allstate is estopped from interpreting the 180-
day provision to include a completion requirement under the
doctrine of regulatory estoppel.  Each will be addressed in
turn.


### 1.   Count I: Breach of Contract

This count alleges that Allstate breached the terms of its
insurance policies by requiring completion of repairs or
replacement for which reimbursement is sought within 180 days of
the actual cash value payment.  As explained above, because the
180-day provision requires such completion, Allstate did not

breach its insurance policies by requiring completion.  The claim is dismissed.

### 2.    Count II: Impossibility

The plaintiffs' second count alleges that the plaintiffs' failure to comply with the 180-day provision should be excused under the doctrine of impossibility, because it was objectively impossible[7] for the plaintiffs to repair, replace, or rebuild their damaged property within 180 days.  The defendant argues that the plaintiffs fail to state a claim on grounds of impossibility because completion within 180-days was not objectively impossible.

"Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible.  Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract."  Kel Kim Corp. v. Cent. Mkts., Inc., 519 N.E.2d 295, 296 (N.Y. 1987).  In Kel Kim, the New York Court of Appeals explained that a lessee was not excused from a provision of a lease requiring the lessee to acquire a liability insurance policy on grounds of impossibility.  Id. at 296.  The Court of

---

[7] The plaintiffs' allegation that it was "objectively impossible" is a legal conclusion that is not entitled to any weight in deciding the motion to dismiss.  See Iqbal, 556 U.S. at 678.

Appeals explained that a defense to contract performance such as impossibility should be applied narrowly and only in extreme circumstances "due in part to judicial recognition that the purpose of contract law is to allocate risks . . . ." Id.  The Court of Appeals held that even if it was difficult to obtain such insurance, it "could have been foreseen and guarded against when [the lessee] specifically undertook that obligation in the lease, and therefore the obligation cannot be excused on this basis." Id.; see also Hanna v. Commercial Travelers Mut. Accident Ass'n of Am., 204 A.D. 258, 259 (N.Y. 1923) ("[W]hen a person by express contract engages absolutely to do an act not impossible or unlawful at the time, neither inevitable accident nor other unforeseen contingency not within his control will excuse him, for the reason that he might have provided against them by his contract").

In this case, as in Kel Kim, the 180-day provision was unambiguous and the plaintiffs could have foreseen the difficulty of completing repairs within 180 days when they undertook to be bound by the policy terms.  That the difficulty inherent in the terms of the policy actually manifested itself is not grounds for excusing the condition because of "impossibility."  The difficulty of completing repairs and/or replacements within 180 days of the ACV payment was foreseeable

and therefore impossibility is unavailable.  Therefore, the claim is dismissed.

### 3.    Count III: Declaratory Judgment

The plaintiffs' third count requests declaratory judgment that Allstate policyholders need not complete repairs or replacements within 180 days of the actual cash value payment to be entitled to reimbursement for those costs because "(a) the policies violate the New York State Insurance Law . . . (b) [the policy language does not allow] Allstate to withhold payments . . . made on the grounds that total repairs have not been completed, and (c) are impossible to perform . . ., and (d) the 180-day provision is void for impossibility, and (e) provide illusory coverage to all Class Members."  (SAC ¶ 175.)  Because, as discussed above, the 180-day provision is consistent with New York law and the language of Allstate's policies, and because the plaintiffs have not stated a claim on grounds of impossibility, the plaintiffs are not entitled to declaratory judgment on those grounds.[8]

---

[8] To the extent the plaintiffs request declaratory judgment on grounds of "illusory coverage," that contention is intertwined with Count VIII and will be discussed in detail in that portion of this Opinion.  However, because the Second Amended Complaint fails to state a claim based on illusory coverage, the claim for declaratory judgment on that ground is also dismissed.

### 4. Count IV: Breach of Settlement Contract

The fourth count alleges that a distinct contract between the plaintiffs and Allstate was formed when Allstate agreed to pay the actual cash value of the plaintiffs' damaged property. The plaintiffs allege that Allstate breached this settlement contract when it failed to conform its interpretation of the 180-day provision to New York Insurance Law section 3404 and/or the language of the Allstate policy.  The defendant disputes that a "settlement contract" exists.

An identical claim was rejected previously, see Woodhams, 748 F. Supp. 2d at 221, and the plaintiffs have provided no distinction that warrants a different outcome in this case.  As this Court explained, and the Court of Appeals for the Second Circuit affirmed:

> This claim fails because the plaintiffs have failed to allege the terms of any new contract between themselves and Allstate that somehow differed from the terms of the original insurance contract.  They have also failed to allege that there was consideration for any new agreement. To the extent that the plaintiffs are simply repackaging their arguments as to what their insurance policy provided, this claim fails because Allstate's interpretation of the policy is consistent with section 3404 and the language of the policies.

Id.  Like the plaintiffs in Woodhams, the plaintiffs in this case have failed to allege facts that demonstrate that the actual cash value payment created a separate contract. Moreover, because the 180-day provision completion requirement

29

was not contrary to New York law or the Allstate policy, even if there was a separate contract, Allstate did not breach it for the same reasons it did not breach the initial insurance policy.

### 5. Count V: Fraud

The plaintiffs' fifth count alleges that Allstate committed fraud under a number of different theories. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). Where a plaintiff pleads fraud by omission, "it must prove additionally that the plaintiff had a duty to disclose the concealed fact." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007).

Allegations of fraud are governed by the heightened pleading standard set forth in Federal Rule of Civil Procedure Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In order to meet the heightened pleading

standard provided by Rule 9(b), a complaint must "(1) specify
the statements that the plaintiff contends were fraudulent, (2)
identify the speaker, (3) state where and when the statements
were made, and (4) explain why the statements were fraudulent."
ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d
Cir. 2007); see also Woodhams, 748 F. Supp. 2d at 221-22.  The
defendant argues that Count V fails to plead fraud and fails to
plead fraud with particularity.

The plaintiffs allege that Allstate committed fraud by (1)
issuing policies with the 180-day provision when Allstate knew
the provision failed to conform its policy to New York law, (2)
issuing policies with the 180-day provision when Allstate knew
the provision was impossible to satisfy, (3) marketing and
selling policies with the 180-day provision without disclosing
either the differences between Allstate's policy and other
policies or that it was impossible for consumers to perform in
accordance with the provision, and (4) refusing "as a regular
business practice to allow consumers seeking to purchase its
product to see the policy language being purchased until
significantly after the purchase."  (SAC ¶¶ 183-200.)

None of the plaintiffs' theories of fraud are pleaded
sufficiently.  First, as described above, Allstate did not fail
to conform its policy to New York law and therefore "no claim of
fraud can be premised on a claim to the contrary."  Woodhams,

31

748 F. Supp. 2d at 222.  Second, as explained above, Allstate's 180-day provision was not objectively impossible to satisfy, and therefore Allstate could not have committed fraud by selling policies with the 180-day provision.

Third, the plaintiffs have failed to allege with particularity any fraudulent or misleading advertisement or other representation made by the defendant.  The only "statement" the plaintiffs have offered is a printout of the defendant's webpage attached to their Second Amended Complaint. (SAC Ex. 16.)  This is the same statement the plaintiffs in Woodhams argued gave rise to a claim for fraud on identical grounds.  See Compl., Woodhams, 10 Civ. 0441 (S.D.N.Y. Jan. 19, 2010), ECF No.1.  This Court rejected the identical claim based on the same alleged representation in Woodhams, holding:

> Given that the webpage expressly stated that "all coverages are subject to availability and qualifications. Other terms, conditions and exclusions apply," it was neither misleading in offering replacement or repair coverage nor could a plaintiff have reasonably relied on it as foreclosing the possibility of a 180-day completion requirement. ([SAC Ex. 16 at 2-4.]) Nothing about these representations was misleading or gave rise to a duty to disclose the exact terms of Allstate's policies.

748 F. Supp. 2d at 222.  Moreover, "the plaintiffs have not alleged any facts that would give Allstate a duty to disclose that its policy varied from the policies offered by other insurers."  Id.  The plaintiffs have failed to introduce

32

additional representations made by the defendant or allege any
additional facts to distinguish the allegations in this case
from those in Woodhams.  These allegations fail to state a
claim.

   With respect to the final fraud claim, the allegations in
the Second Amended Complaint (SAC ¶ 113) are identical to the
allegations in Woodhams, Compl. ¶ 113, Woodhams, 10 Civ. 0441
(S.D.N.Y. Jan. 19, 2010), ECF No.1.  In Woodhams, this Court
dismissed the identical allegation, holding, "[t]o the extent
that the plaintiffs complain that they were not provided with
their policies before they purchased the policies, the
plaintiffs do not allege that they did not receive the policies
after purchase or that they were unaware of what the policies
provided before they sustained a covered loss.  Indeed, the gist
of part of their fraud allegations is that they assert,
incorrectly, that the policies contained terms that Allstate did
not intend to honor."  748 F. Supp. 2d at 222.  The plaintiffs
have taken no steps to differentiate the claim in this case from
the claim in Woodhams, and it is similarly dismissed.


### 6. Count VI: Breach of Fiduciary Duty

   The plaintiffs' sixth count alleges that Allstate assumed a
fiduciary duty toward its policyholders and violated that duty.
It is well settled under New York law that insurance companies

do not owe their policyholders a fiduciary duty.  See Uhlman v. N.Y. Life Ins. Co., 17 N.E. 363, 364-65 (N.Y. 1888); see generally Rabouin v. Metro. Life Ins. Co., 699 N.Y.S.2d 655, 656-57 (Sup. Ct. 1999), aff'd, 723 N.Y.S.2d 651 (App. Div. 2001).  While there are situations in which a fiduciary duty may be created between an insurer and its policyholders, "those instances are the exception rather than the rule."  Rabouin, 699 N.Y.S.2d at 657; see also Woodhams, 748 F. Supp. 2d at 223-24.

The Second Amended Complaint fails to allege a breach of any fiduciary duty that may exist.[9]  The allegations in the Second Amended Complaint, identical to those in Woodhams, allege only that Allstate had a "pattern and practice of breaching [its] obligations under the polices [sic] by adjusting losses in a manner deliberately calculated to justify depriving the insured of the benefits of the replacement cost coverage . . . ."  (SAC ¶ 207.)[10]  "As discussed above, Allstate did not breach any obligations under its policies or under New York law, and therefore the allegations in Count [VI] must be dismissed."  Woodhams, 748 F. Supp. 2d at 224.  Regardless of the existence

---

[9] As explained in Woodhams, although "[t]here is some disagreement in recent cases as to whether representations made in the course of advertising and solicitation can create a fiduciary relationship, . . . [t]here is no need to resolve [the issue] because the complaint does not allege a breach of any fiduciary duty that might exist."  748 F. Supp. 2d at 224.
[10] Indeed, the allegations of breach of fiduciary duties in the complaints are word for word the same.  See Woodhams, 748 F. Supp. 2d at 224; SAC ¶ 207.

of a fiduciary obligation, there was no breach, and the Second
Amended Complaint fails to state a claim for breach of fiduciary
duty.

### 7. Count VII: New York GBL § 349

The plaintiffs' seventh count alleges that Allstate
"engaged in misleading and deceptive conduct . . . by denying
plaintiffs' specified claims without basis . . . ." (SAC
¶ 211), and that Allstate's "misleading, egregious and deceptive
actions . . . as detailed, constitute deceptive business acts
and practices," in violation of GBL section 349.  These
conclusory allegations, reliant on conduct by Allstate that was
consistent with both New York law and the Allstate policy, fail
to state a claim for which relief may be granted.

To plead a claim under section 349, a plaintiff must allege
"conduct of the defendant that is consumer-oriented" and make "a
showing that defendant is engaging in an act or practice that is
deceptive or misleading in a material way and that plaintiff has
been injured by reason thereof."  Oswego Laborers' Local 214
Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 744 (N.Y.
1995).  Unlike a claim for fraud, a plaintiff need not show
reliance or satisfy the particularity requirement of Rule 9.
See Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir.
2005); see also Woodhams, 748 F. Supp. 2d at 224.

Just as with many of the claims detailed above, this claim
is pleaded in nearly identical fashion to the claim dismissed in
Woodhams, 748 F. Supp. 2d at 224.  This Court's holding in
Woodhams dismissing the plaintiffs' claims applies with equal
force in this case.  "For the reasons explained above,
Allstate's handling of the plaintiffs' coverage claims was
entirely consistent with the terms and policies, and thus was
not misleading or deceptive."  Id.  Accordingly, Count Seven
should be dismissed.


### 8. Count VIII: Illusory Coverage

The plaintiffs' eighth count alleges that because Allstate
sold policies that did not on their face contain a "completion"
requirement, but that Allstate subsequently interpreted them to
require completion as a prerequisite to replacement costs in
violation of New York law, the plaintiffs "have been sold
illusory coverage at a price far above the value of the coverage
actually provided."  (SAC ¶ 221-22.)  The plaintiffs demand a
refund of premiums paid for this allegedly illusory coverage.
The defendant alleges that this count fails to state a claim
both because the Allstate policy unambiguously required
completion and because the relief sought is barred by the filed
rate doctrine.  As discussed above, the Allstate policy did not

violate New York law and unambiguously contained the completion requirement, and therefore this claim must fail.

Moreover, the plaintiffs' demand is also barred by the filed rate doctrine.  The filed rate doctrine "bar[s] plaintiffs' claims seeking the recovery of insurance premiums that have been approved by [NYSID]." Roussin v. AARP, Inc., 664 F. Supp. 2d 412, 416 (S.D.N.Y. 2009) (citations omitted) (collecting cases), aff'd, No. 09 4932 Civ., 2010 WL 2101912 (2d Cir. May 26, 2010) (Summary Order).  Because "legislative bodies design agencies for the specific purpose of setting uniform rates" and "courts are not institutionally well suited to engage in retroactive rate-setting," courts typically do not provide relief from premiums alleged to be unreasonable or otherwise inappropriate.  Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 19 (2d Cir. 1994) (internal quotation omitted).  "[T]he doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either . . . strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." Marcus v. AT&T Corp., 138 F.3d 46, 59 (2d Cir. 1999). There is no exception to the filed rate doctrine based on an alleged fraud on the rate maker. See Wegoland, 27 F.3d at 22; see also Woodhams, 748 F. Supp. 2d at 219-20.

The plaintiffs' allegations here are identical in all material respects to Count One of the plaintiffs' allegations in Woodhams.  See Compl. ¶¶ 78-85, Woodhams, 10 Civ. 0441 (S.D.N.Y. Jan. 19, 2010), ECF No.1.  The only discernible difference is that in Woodhams the plaintiffs demanded a "pro rata refund of the premiums allocable to the fair value of the replacement coverage," id. ¶ 84, while in this case the plaintiffs demand a "refund of the premiums charged . . . ." (SAC ¶ 223).  In Woodhams, this Court explained that the suit for a pro rata refund was barred by the filed rate doctrine:

> [This count] claims, in essence, that portions of Allstate's policies are worthless and illegal. It seeks a refund of a portion of the premium charged for the policies. Because these policies and the premiums associated with them were approved by NYSID, [the count] is a direct challenge to the reasonableness of the filed rates, and is therefore barred by the retroactive rate-setting strand of the filed rate doctrine.

748 F. Supp. 2d at 220.  The plaintiffs' attempt to plead around this decision by requesting a total refund, rather than a pro rata refund, is unavailing.  To the extent the plaintiffs' demand a refund of premiums approved by NYSID, the claim is barred by the filed rate doctrine.

In the plaintiffs' papers, the plaintiffs also attempt to plead around Woodhams by arguing that they only seek a total refund of the extended limits coverage endorsement, an endorsement they allege was "sold separately for a

separate premium." (Pls.' Mem. Opp. 29.) However, the premium for the extended limits coverage endorsement must also necessarily have been approved by NYSID.[11] Therefore, the filed rate doctrine applies to the extended limits coverage endorsement and to the extent that the plaintiff alleges in that the premiums for this endorsement were unreasonable, the claim is barred. See Roussin, 664 F. Supp. 2d at 416-17 ("to condone such an approach would gut the filed rate doctrine, as any future complainant would allege injuries stemming from only particular portions of a filed rate, rather than the entire rate."); Woodhams, 748 F. Supp. 2d at 220.

### 9. Count IX: Regulatory Estoppel

The plaintiffs' final count alleges that because Allstate "misrepresented" to NYSID that the completion requirement was not substantively different from the prior "make claim" requirement, Allstate should be estopped from interpreting the 180-day provision to include a completion requirement under the doctrine of regulatory estoppel. The defendant argues that regulatory estoppel is not a recognized cause of action under New York law and even if it were, the plaintiffs have not

---

[11] The defendant confirmed at the argument of the motion that the premium for the extended limits coverage was approved by NYSID. (Hr'g Tr. 8)

alleged facts giving rise to regulatory estoppel.  The Second Amended Complaint fails to state a claim for regulatory estoppel.

It is unclear whether New York has adopted the doctrine of regulatory estoppel.  The plaintiffs have produced no cases where the doctrine has been pleaded successfully.  In Employers Ins. of Wausau v. Duplan Corp., this Court rejected the attempted application of the doctrine to create an ambiguity in an otherwise unambiguous insurance provision and explained:

> [T]he theory [of regulatory estoppel]. . . has received almost universal disapproval.  It has been consistently rejected by federal and state authorities across the country and has never been adopted by any New York court.  Indeed, at least two New York courts have flatly rejected the theory . . . I am aware of only one New York court that has suggested that the doctrine might be viable.  But in that case, construing a different policy provision, the court held that there were no unequivocal representations about the meaning of the provision to warrant application of the theory.  See Tozzi v. Long Island R.R. Co., 651 N.Y.S.2d 270, 275 (Sup. Ct. 1996).
>
> As the insurers correctly note, the overwhelming majority of state and federal courts outside of New York to have considered the issue have unequivocally rejected . . . the regulatory estoppel argument, primarily on the basis that extrinsic evidence is not permitted to vary the terms of a clear and unambiguous pollution exclusion provision.

No. 94 Civ. 3143, 1999 WL 777976, at *14 (S.D.N.Y. Sept. 30, 1999) (internal quotation marks and citations omitted).

Moreover, New York's parol evidence rule counsels against adoption of a regulatory estoppel cause of action.

The parol evidence rule bars consideration of extrinsic evidence to contradict an otherwise unambiguous insurance provision.  <u>Metro-North Commuter R.R. Co. v. Yonkers Contr. Co.</u>, 680 N.Y.S.2d 537, 538 (App. Div. 1998).  Claims of regulatory estoppel, if permitted, would encourage backdoor judicial consideration of extrinsic evidence to second guess an otherwise unambiguous policy, in direct contravention of the parol evidence rule.  <u>See</u> <u>Employers Ins. of Wausau</u>, 1999 WL 777976, at *14 (collecting cases). Therefore, because no New York cases have embraced the doctrine of regulatory estoppel and because it runs contrary to New York's parol evidence rule, it is unlikely that regulatory estoppel is a cause of action under New York law.

Moreover, whether regulatory estoppel can ever be the basis for a viable claim need not be definitively resolved because the plaintiffs' Second Amended Complaint fails to state a claim on those grounds.  In <u>Tozzi</u>, one of the only New York cases in which regulatory estoppel was considered, the New York Supreme Court declined to apply the doctrine to an insurance provider's alleged representations because, "[n]o hearings were conducted.  No regulatory proceedings of any other nature were conducted requiring the insurer's presence.  The insurer did not submit a sworn written

statement or make any factual representation under oath.
The insurer never affirmatively addressed the
issue . . . ."  651 N.Y.S.2d at 275; see also Rutgerswerke
AG and Frendo S.p.A. v. Abex Corp., No. 93 Civ. 2914, 2002
WL 1203836, at *10 (S.D.N.Y. June 4, 2002) (declining to
apply the doctrine of regulatory estoppel because of an
absence of a representation at any formal administrative
proceedings or hearing).

The facts in this case are similar to those in Tozzi.
The plaintiffs here do not allege that NYSID held any
formal hearing or regulatory proceeding on this issue.  The
plaintiffs do not allege that Allstate made actual
representations to NYSID regarding the 180-day provision.
Rather, the plaintiffs demand regulatory estoppel based
upon alleged omissions from documents sent to NYSID for
approval.  The defendant asserts that its submission to
NYSID was not misleading in any way.  In any event, the
plaintiffs cite no authority for their broad application of
a doctrine that is not accepted under the laws of New York.
This claim is dismissed as well.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, they are either moot or without merit.  For the reasons explained above, Allstate's motion to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) is **granted**.  The Second Amended Complaint is therefore **dismissed with prejudice.  The Clerk is directed to enter judgment dismissing the Second Amended Complaint and closing this case.  The Clerk is also directed to close all pending motions.**

SO ORDERED.

Dated:    New York, New York
          May 28, 2013                    _____/s/_____
                                               John G. Koeltl
                                        United States District Judge